IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| LISA CARVAJAL, § | |
| § | |
| *Plaintiff* § | |
| § | |
| v. § | |
| § | Civil Action No. 7:24-CV-00140 |
| THE UNIVERSITY OF TEXAS RIO § | JURY |
| GRANDE VALLEY DEPARTMENT § | |
| OF INTERCOLLEGIATE § | |
| ATHLETICS § | |
| § | |
| *Defendant* § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**NOW COMES, LISA CARVAJAL,** and files this, her Original Complaint complaining of **THE UNIVERSITY OF TEXAS RIO GRANDE VALLEY DEPARTMENT OF INTERCOLLEGIATE ATHLETICS** and for cause of action would respectfully show the Court the following:

### Section 1

### Introduction

**1.01** This case involves adverse personnel actions taken by The University of Texas Rio Grande Valley Department of Intercollegiate Athletics against Ms. Carvajal, which were motivated by unlawful gender/sex and sexual orientation discrimination. The evidence will show that The University of Texas Rio Grande Valley conducted a sham investigation in order to discharge Plaintiff, and that after investigating her, The University of Texas Rio Grande Valley terminated Ms. Carvajal. The sham investigation was spear-headed by the Vice President and Director of Athletics of The University of Texas Rio Grande Valley, who is male, and who ultimately

terminated Ms. Carvajal and relieved her of her duties as Assistant Men's and Women's Tennis Coach at The University of Texas Rio Grande Valley.

## Section 2

## Parties

**2.01**   Plaintiff, **LISA CARVAJAL**, (hereinafter referred to as "Plaintiff" or "Ms. Carvajal") is a resident of McAllen, Hidalgo County, Texas.

**2.02**   Defendant, **THE UNIVERSITY OF TEXAS RIO GRANDE VALLEY AND ITS DEPARTMENT OF INTERCOLLEGIATE ATHLETICS** (hereinafter referred to as "UTRGV," "Defendant," or "Employer"), is a Texas public educational entity. UTRGV may be served by serving Karen E. Adams, Chief Legal Officer, Office of Legal Affairs, 1201 West University Dr., MRIOB – 5th Floor, Suite 5.532, Edinburg, Texas 78539-2909.

## Section 3

## Jurisdiction & Venue

**3.01**   The incident made the basis of this lawsuit occurred in Edinburg, Hidalgo County, Texas. As such, jurisdiction and venue are proper in the McAllen Division of the Southern District of Texas.

## Section 4

## Exhaustion of Administrative Remedies

**4.01**   Plaintiff timely filed a Charge of Discrimination with the Texas Workforce Commission Civil Rights Division on September 21, 2022, which, as a result, was dual-filed with the U.S. Equal Employment Opportunity Commission. See **Exhibit A** attached to Plaintiff's Original Complaint.

**4.02** On or about October 5, 2023, the U.S. Equal Employment Opportunity Commission sent Plaintiff an acknowledgment of its receipt of Plaintiff's request for a Notice of Right to Sue. See **Exhibit B** attached to Plaintiff's Original Complaint.

**4.03** On or about January 5, 2024, the U.S. Department of Justice Civil Rights Division sent its Notice of Right-to-Sue Letter. See **Exhibit C** attached to Plaintiff's Original Complaint.

## Section 5

## Factual Allegations

**5.01** Plaintiff was employed by UTRGV as an assistant coach for the men's and women's tennis teams. On or about February 17, 2022, Head Coach West Nott instructed Plaintiff to pick up a five-passenger rental car from Enterprise in Edinburg, Texas so that it could be used to travel to Stephenville, Texas for an official varsity tennis tournament. Plaintiff picked up the vehicle at 7:30 am and proceeded to drive to the UTRGV Village Apartments to meet with the UTRGV women's tennis team and allow them to load their luggage and belongings into the rental vehicle. Plaintiff then set out for the long drive to Stephenville.

**5.02** At approximately 4:45pm, the team arrived at an Airbnb located at 9020 U.S. 377 Stephenville, TX 76401. West Nott, along with 10 student athletes who rode with him in a fifteen-passenger Enterprise rental van entered the house. West Nott spent no more than 10 minutes inside the house to look around. Each of the bedrooms had different bedding configurations, but there were no rooms with only a single bed. Coach Nott did not make room assignments or designate where each of the players or Plaintiff was supposed to sleep. He then left the house and went to have dinner by himself. Coach Nott came back to the house at 6:35 pm to drive the rest of the team, including Plaintiff, to have dinner. After dinner, Coach Nott drove the team to an HEB

grocery store and then back to the house. He then departed the rented house and went to a hotel to spend the night.

**5.03** By the time the team returned to the house, Plaintiff had chosen a bedroom. Plaintiff decided to sleep in a room with the fewest number of beds, which was two. Plaintiff was exhausted from her long drive, so she proceeded to get into one of the beds in the room to go to sleep. After she had already gotten into a bed, and presumably because there were no other beds available, a player from the team entered the room and got into the other bed to go to sleep. The night passed uneventfully.

**5.04** The next day, the team awoke and traveled to Tarleton State University to play in the tournament. UTRGV played against the University of Texas Permian Basin tennis team and won. After the match, the team went out to eat and, subsequently, returned back to the Airbnb. It was shortly after 4:00 pm when Head Coach West Nott walked into the house and asked Plaintiff if she could accompany him outside so that they could speak for a moment. When Plaintiff walked outside, West Nott informed her that he had the Deputy Director of Athletics/Chief Revenue Officer, Vince Volpe, on the phone. West Nott stated that he was made aware by some of the student athletes that Plaintiff and a player had shared a bedroom the night before. Because Plaintiff is female and homosexual, West Nott informed Plaintiff that there was a suspicion that something inappropriate had occurred between Plaintiff and the student-athlete with whom she shared a room. West Nott called Vince Volpe because it was the school's protocol if and when an "incident" such as this occurred. Plaintiff then explained to West Nott and Vince Volpe that there were no rooms available to her that had only one bed. She told them that she chose the room with the fewest beds because neither the rooms nor beds were assigned or designated for each person. She stated that she chose the room and was in bed before the player decided to sleep in the other bed in the room.

Finally, Plaintiff asserted that the night was uneventful, that she and the student-athlete had stayed in their respective beds, and that nothing inappropriate occurred during the night. Vince Volpe informed Plaintiff that as part of the school's protocol, Plaintiff was required to leave the premises, drive back to Edinburg, Texas, and await further instruction. West Nott told Plaintiff that he and the rest of the team were instructed to leave the Airbnb and check into a hotel. Plaintiff was asked to re-enter the house, gather her belongings, and leave.

5.05    During the drive back to Edinburg, Plaintiff became too tired to continue. She stopped in Corpus Christi, Texas and stayed in a hotel for the night. She was not contacted again until three days later, on Monday, February 21, 2022, when she was asked to attend a meeting at the UTRGV campus on Friday, March 11, 2022 with Vince Volpe, West Nott and UTRGV HR Business Partner, Debra Torres. During the meeting, which was part of a sham investigation, Plaintiff explained her thought process and point of view on the sequence of events that unfolded during the trip to Stephenville, Texas. She explained that she intended nothing inappropriate and that she had never done or said anything inappropriate in front of, nor directed to, a staff member or student-athlete. After Plaintiff gave her recollection of events, Debra Torres handed her a document to sign. After signing the document, Ms. Torres escorted her out to the parking lot so that she could collect a university-issued laptop computer, a credit card, and several expense receipts that Plaintiff had collected while on competition trips. Plaintiff was then required to leave the UTRGV campus and not return until instructed otherwise.

5.06    On or about March 25, 2022, Plaintiff received a termination letter sent signed by Chasse S. Conque, Vice President and Director of Athletics.

5.07    A similarly-situated male assistant coach would not have been put in the position of staying with female members of the tennis team. Further, the Head Coach, West Nott, who is a male,

stayed in his own hotel room while Plaintiff, his female assistant coach was forced into a situation that led to her eventual termination after the sham investigation. Because of her gender and sexual orientation, her placement in that situation led to unfounded rumors that were completely unsubstantiated and that led to her termination. Plaintiff felt that West Nott discriminated againt her because of her sexual orientation because he had once told her not to mention that she was gay to any of the players. In addition, Plaintiff discovered that West Nott had made bigoted comments about gay females.

**5.08** In addition, Coach Nott's decision to house the female tennis players together with Plaintiff violated UTRGV's athletic department policy and procedure. The UTRGV Athletics Coaches' Compliance Manual provides a checklist for making team travel arrangements that requires coaches to submit a Travel Declaration Form seven days prior to the departure date, which includes the travel itinerary, dates of arrival and departure, hotel information, meals/per diem, and the travel party/rooming list. Clearly, the Compliance Manual contemplates that Head Coach West Nott was required to get hotel rooms for his coaches and players and to make rooming assignments that complied with athletic department policy. Coach Nott, a male, failed to do so, but he was not disciplined at all. In the alternative, if Coach Nott did submit a Travel Declaration Form that listed an Airbnb in lieu of a hotel and that contemplated room assignments that required Plaintiff to sleep in the same room as a player, then the athletic department, business office, and compliance office were aware of and approved the arrangements, meaning that the stated cause for termination was pretextual and the only cause for termination was Plaintiff's gender and sexual orientation.

**5.09** Plaintiff now brings suit for gender and sexual orientation discrimination after receiving permission from the Department of Justice, Civil Rights Division, which issued a Right-to-Sue letter as shown in Section 4.

## Section 6

### Subject Matter Jurisdiction (Discharge)

**6.01** When suing a governmental entity, "all the elements of TCHRA circumstantial evidence claims are, perforce, jurisdictional. See *Alamo Heights Indep. Sch. Dist. V. Clark,* 544 S.W.3d 755, 805 (Tex. 2018). See *Texas Health and Human Services Commission, De La Cruz,* 13-21-00082-CV, (Tex. App. – Corpus Christi-Edinburg, 2023).

**6.02** Under the McDonnell Douglas framework, the employee must first establish a prima facie case, which gives rise to a rebuttable presumption that a statutory violation occurred. See *Alamo Heights*, 544 S.W.3d at 782 (citing to *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252-54 (1981)):

A. *Prima Facie Case (Discharge)*

Ms. Carvajal is a female – part of a **protected class** based on her **(1) gender** – female and (2) **sexual orientation** – homosexual.

She suffered an **(2) adverse personnel action** when she was **discharged** by Chasse S. Conque on March 25, 2022.

Plaintiff was **(3) qualified** for the position of assistant tennis coach.

Plaintiff was **(4) replaced** and subjected to disparate treatment because Coach West Nott was not disciplined for his violation of athletic department policy.

**6.03** The employer may then rebut this presumption by offering a legitimate, nondiscriminatory reason for the disputed employment action. See Id. (citing *Burdine*, 450 U.S. at 254-55). "Once rebutted, the presumption disappears, and the employee lacking direct evidence cannot prove a statutory violation without evidence that the employer's stated reason is false and a pretext for discrimination." Id. (citing *Burdine*, 450 U.S. at 255-56).

**6.04** An employee satisfies this burden at this state by showing **either** (1) the stated reason was **false** or **not credible**, or (2) the defendant's reason, while true, is only one reason, and discrimination was another motivating factor. See *Gonzalez v. Champion* Techs., Inc., 384 S.W.3d 462, 466 (Tex. App. – Houston [14th Dist.] 2012, no pet.). With respect to the employee's burden concerning the employer's reason as false or not credible, the 13th Court of Appeals in *De La Cruz* included a footnote and explained: "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination and may be quite persuasive. See *De La Cruz* at 10 (citing to *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000). The following section reveals the falsity and lack of credibility surrounding Defendant's decision to terminate Ms. Carvajal.

*B. Pretext (Discharge)*

> The investigation supporting Plaintiff's termination was a choreographed sham calculated to shift blame from Head Coach West Nott, a heterosexual male, to Plaintiff, a homosexual female. Defendant used unsubstantiated complaints and statements by players to do so. Furthermore, Plaintiff was subjected to disparate treatment because had she been male, she would never have been placed in a situation in which she had to share a house with female players. Further, had she been heterosexual, West Nott, Vince Volpe, and Chasse Conque would never have suspected her of inappropriate behavior.

**6.05** An employee can indeed use **evidence of disparate treatment** to show that misconduct offered as a nondiscriminatory reason for termination is actually pretextual. See *Ng-A-Mann v. Sears, Roebuck & Co.*, 627 Fed. Appx. 339, 342 (5th Cir. 2015) (per curiam).

*C. Pretext (Discharge)*

> Furthermore, Coach Nott failed to follow UTRGV athletic department policy when making the travel arrangements and, therefore, was ultimately responsible for the situation that resulted in Plaintiff's termination. Yet Coach Nott was not disciplined, and Plaintiff suffered the disparate treatment of termination.

## Section 7

## Causes of Action

**7.01**    **42 USC 2000e-2(a)**.  Plaintiff asserts that the Defendant violated Title VII of the Civil Rights Act of 1964 in that the Defendant engaged in unlawful gender/sex discrimination by **discharging** her because she is female.  Plaintiff seeks compensatory damages, costs, attorney's fees, including compensation for reasonable expert fees, and punitive damages under Title VII.

## Section 8

## Controlling Authority

**8.01**    Under Title VII of the Civil Rights Act of 1964, an employer commits an unlawful employment practice if the employer:

   (1)    fails or refuses to hire an individual, <u>discharges</u> any individual, or otherwise discriminates  against any individual with respect to compensation or the terms, conditions, or privileges or employment, because of race, color, religion, <u>sex</u>, or national origin; or

   (2)    limits, segregates, or classifies an employee or applicant for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin.

42 U.S.C. 2000e(a)(1)(2).  Federal Courts have construed "sex" to include sexual orientation.

**8.02**    Plaintiff suffered from disparate treatment when she was terminated for being placed in a position that no male coach would be placed in and, further, for being disciplined when her male Head Coach West Nott was not disciplined for violating UTRGV athletic department policy.

## Section 9

## **Damages**

**9.01** As a result of acts and/or omissions as set forth above, Plaintiff sustained the following damages, including but not limited to:

1. Backpay;

2. Interest on backpay;

3. Past and future emotional pain;

4. Past and future suffering;

5. Past and future inconvenience;

6. Past and future mental anguish;

7. Past and future loss of enjoyment of life;

8. Past and future other non-pecuniary damages;

9. Reasonable attorney's fees; and

10. Punitive damages.

**9.02** Plaintiff seeks to recover all of her damages in an amount which the jury determines to be just and appropriate, based on the jury's discretion and judgment in its role as the trier of fact.

## Section 10

## **Jury Demand**

**10.01** Plaintiff demands a trial by jury herein and has paid the jury fee.

## Section 11

## **Exhibits**

**EXHIBIT A:** Employment Discrimination Complaint Form; and

**EXHIBIT B:** U.S. Equal Employment Opportunity Commission sent Plaintiff an acknowledgment of its receipt of Plaintiff's request for a Notice of Right to Sue.

**EXHIBIT C:** January 5, 2024 U.S. Department of Justice Civil Rights Division Notice of Right-to-Sue Letter.

### Section 12

### Prayer

**12.01 WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that Defendant be cited to appear and answer this cause, and that upon final trial hereof, Plaintiff recovers judgment against Defendant for her actual damages in amounts within the jurisdictional limits of this Court, for all damages respectively sustained by her as set forth above together with pre-judgment interest thereon at the maximum legal or equitable rate; for post-judgment interest on the amount of the judgment at the maximum rate allowed by law; for recovery of costs of court; and for such other and further relief, at law or in equity, to which she may show herself justly entitled to receive.

Respectfully submitted,

John A. Millin IV
Federal ID No. 24026
State Bar No. 24005166
john@millinmillin.com
4107 North 22nd Street
McAllen, Texas 78504
Tel: (956) 631-5600
Fax: (956) 631-5605

OF COUNSEL:

**MILLIN & MILLIN, PLLC**